J-A05004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH WESLEY | : | |
| | : | |
| Appellant | : | No. 1640 EDA 2022 |

Appeal from the Judgment of Sentence Entered February 2, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0004711-2017

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 26, 2023**

Joseph Wesley appeals from the judgment of sentence, entered in the Court of Common Pleas of Montgomery County, after a jury convicted him of two counts of attempted first-degree murder[1] and one count each of criminal solicitation to commit first-degree murder[2] and criminal conspiracy to commit first-degree murder.[3]  After review, we affirm.

In April and June 2016, Wesley sold drugs and firearms to Danielle Miller who, Wesley later learned, was acting at the direction of law enforcement.[4]

_____

[1] 18 Pa.C.S.A. § 901(a).

[2] *Id.* at § 902(a).

[3] *Id.* at § 903(a)(1).

[4] Wesley was charged in connection with the drug and firearms sales to Miller and, on June 15, 2018, was convicted of, *inter alia*, the illegal sale or transfer
*(Footnote Continued Next Page)*

On October 14, 2016, authorities were unable to locate Wesley, but served his girlfriend, Jennifer Vance, with a warrant for Wesley's arrest. On October 21, 2016, Wesley contacted Darelle Bean and asked him to kill Miller in exchange for $5,000.00. *See* N.T. Jury Trial, 11/3/21, at 333, 335, 337. That same day, Wesley traveled with Bean to Norristown, Montgomery County to show him Miller's home, her vehicle and a nearby trail that Bean could use to flee the area after the murder. Bean took pictures of Miller's residence and screenshots of its location on Google Maps. *Id.* at 335-36, 339. Bean traveled to Miller's residence a few more times before recruiting Ceasar Morales to carry out the murder due to Bean's reservations about killing a woman. *Id.* at 341, 346.

On December 2, 2016, at approximately 5:00 p.m., Miller and her friend, Stephen Rowl entered Miller's vehicle. Immediately after Miller sat down in the front passenger seat, Morales fired shots into her car. Miller suffered bullet wounds to her right hand and left bicep, resulting in two broken bones in her hand and requiring her to wear an arm sling for approximately two months. Rowl was shot in the back and in his right leg; he still has a bullet in his back, which causes him pain. At approximately 5:15 p.m., Bean called Wesley to inform him that "the job was done." *Id.* at 356. Wesley

---

of firearms and possession with intent to deliver a controlled substance. On appeal, this Court affirmed his judgment of sentence. *See **Commonwealth v. Wesley***, 3084 EDA 2018 (Pa. Super. filed Dec. 12, 2019) (unpublished memorandum decision).

subsequently fled to Louisiana and was not apprehended until January 17, 2017.

During trial, Bean testified regarding lies[5] he told to the police throughout in his attempt to transfer blame to Morales. *Id.* at 388-91, *id.* at 358 (Bean testifying, "It wasn't that I lied. It was minimizing my role."). Bean stated that in exchange for testifying he had been hoping for "leniency from the court," but that no specific amount of incarceration had been discussed. *Id.* at 361; *id.* at 371 (Bean conceding he was testifying for selfish reasons).

Wesley was arrested and charged with the above-mentioned crimes. He proceeded to trial on November 1, 2021. At trial, various people testified, including, *inter alia*: Earnest Reed, Bean's cousin, who had originally introduced Bean and Wesley; Vance, with whom Wesley has a son; Ronald Knight, with whom Miller has a child; and Detective Mark Minzola of the Montgomery County Police Department, an expert in forensic cell phone data analysis. The jury found Welsey guilty of all charges and, on February 2, 2022, the court imposed an aggregated sentence of 40 to 80 years' imprisonment. On February 9, 2022, Wesley filed a timely post-sentence motion, and, on May 5, 2022, he filed a supplemental post-sentence motion. On June 6, 2022, the trial court denied the post-sentence motions. Wesley

---

[5] Bean had originally told the police that Morales purchased the gun used in the shooting, that Morales called Wesley to tell him that the shooting was complete, and that Morales negotiated payment for the murder. *See* N.T. Jury Trial, 11/3/21, at 358. However, Bean provided the weapon, called Wesley after the shooting, and received a partial payment of $500.00 from Wesley.

filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925. Wesley raises the following issues for our review:

1. Did the trial court impose an illegal sentence by sentencing [Wesley] to 20-40 years' incarceration to run consecutively for both counts of [a]ttempted [m]urder where the maximum sentence on the offense actually charged was 20 years' incarceration, the Commonwealth never charged [Wesley] with the enhanced offense of [a]ttemped [m]urder – [s]erious [b]odily [i]njury [c]aused[—]which would allow a 40[-]year incarceration sentence, and imposing such a sentence required a constructive amendment to the bills of information which was not authorized by the Rules of Criminal Procedure?

2. Whether the trial court erred in failing to conduct an evidentiary hearing and denying [Wesley's] motion for a new trial based on after[-]discovered evidence of a [**Brady**[6]] violation where the cooperating co-defendant filed a motion to withdraw his guilty plea in which he asserted that he was promised a "single[-]digit sentence" in exchange for his testimony against [Wesley], the Commonwealth never provided that information to [Wesley] prior to trial despite having a copy of the motion, and the credibility of the cooperating co-defendant was the only real issue in the case?

3. Whether the trial court should have granted a new trial because the verdict was against the weight of the evidence where the only real evidence against [Wesley] was the testimony of the cooperating co-defendant who told multiple different stories, admitted to lying, [and] received a favorable plea deal[;] where the testimony was contradicted by the cell phone records[;] and where people other than [Wesley] had expressed a desire to kill the complainant?

Appellant's Brief, at 6-7.

Wesley first contends that the court imposed an illegal sentence for attempted first-degree murder with a serious bodily injury enhancement without providing notice of its intent to seek the enhancement in the bills of

_____

[6] **Brady v. Maryland**, 373 U.S. 83 (1963).

information. ***Id.*** at 36. Wesley argues that by permitting a constructive amendment of the bill of information during trial, the trial court violated his due process right not to be convicted of an offense other than the one charged. ***Id.*** at 34.

Section 1102(c) of the Crimes Code provides that the maximum sentence for attempted murder is no more than 20 years. 18 Pa.C.S.A. § 1102(c). However, if serious bodily injury occurs during the attempted murder, the maximum sentence increases to **no more than 40 years**. ***Id.*** (emphasis added). Serious bodily injury is a fact that must be proven by the Commonwealth, beyond a reasonable doubt, for this sentence enhancement to apply. ***See Commonwealth v. Barnes***, 167 A.3d 110, 117 (Pa. Super. 2017) (en banc).

Due process requires the Commonwealth to give a defendant notice if it seeks to prove serious bodily injury. ***Id.*** Notice must "be sufficiently specific so as to allow the defendant to prepare any available defenses should he exercise his right to a trial." ***Commonwealth v. Sims***, 919 A.2d 931 (Pa. 2007) (citation omitted); ***see also*** Pa.R.Crim.P. 560(C) (information shall cite to statute or provision of law defendant is alleged to have violated).

In ***Commonwealth v. King***, 234 A.3d 549 (Pa. Super. 2020), this Court determined that although the defendant's indictment and criminal information were facially inadequate to give notice regarding the Commonwealth's intent to charge the defendant with the serious bodily injury enhancement, this error was harmless and, thus, the sentence was not illegal. ***Id.*** at 562-63. There,

defendant received *de facto* notice of the Commonwealth's intent to charge him with the enhancement where: factual summaries in the charging documents made clear that the victim suffered serious bodily injury; the Commonwealth advised the defendant of the minimum sentence that could be imposed, which was consistent with serious bodily injury enhancement guidelines; and the Commonwealth and defense attorney reviewed and agreed to the verdict sheets, which included a special interrogatory regarding whether the victim suffered serious bodily injury. *Id.* at 566.

However, in **Commonwealth v. Bickerstaff**, 204 A.3d 988 (Pa. Super. 2019),[7] a case that Wesley argues is "directly on point," Appellant's Brief, at 37, the defendant was not given *de facto* notice of the charge. Rather, this Court determined that the Commonwealth "ambushed" the defendant with the serious bodily injury charge where it had been mentioned for the first time on the verdict sheet's special interrogatory at the time it was provided to the jury. Indeed, the complaint, information, and jury instructions made no mention of the enhancement. In rejecting the Commonwealth's harmless error argument, this Court reasoned that the defendant was unable to defend against the charge at trial. *Id.* at 997-98. That is not the case here.

Here, like in **King**, Wesley was given *de facto* notice of the Commonwealth's intent to prove the serious bodily injury enhancement.

---

[7] In **Bickerstaff**, the notice issue was made in the context of an ineffective assistance of counsel claim on collateral appeal from an order denying a Post Conviction Relief Act petition.

Wesley's criminal complaint set forth Miller's and Rowl's injuries. *See* Criminal Complaint, 5/9/17 at 2 ("[] Miller suffered bullet wounds to her right hand and left bicep. [] Rowl suffered bullet wounds to his right[-]side torso and his right leg."). Further, on October 12, 2021, both parties were sent the proposed verdict sheet and proposed criminal charges, which contained an interrogatory below each count asking the jury whether the victims suffered serious bodily injury as a result of each offense. Additionally, during the October 13, 2021 status conference, Kelly Lloyd, Esquire, the Assistant District Attorney, explained, in relevant part, that "Wesley's maximum exposure . . . and **the serious bodily injuries established**, he'll be looking at **20 to 40 [years]** on each of those counts, yes, on the attempted murder." Status Conference, 10/13/21, 45-46 (emphasis added). Indeed, **almost three weeks before trial**, Wesley knew of the facts alleged in the criminal complaint, that the proposed verdict sheet included a serious bodily injury interrogatory, and that his maximum exposure was consistent with a serious bodily injury charge. Accordingly, unlike in **Bickerstaff**, Wesley was not "ambushed" regarding the enhancement.

In light of the foregoing, we conclude that the Commonwealth gave Wesley *de facto* notice that it intended to charge him with attempted first-

degree murder with the serious bodily injury enhancement.[8]  ***See King***,

***supra***.  Accordingly, Wesley's first claim is meritless.

Next, Wesley argues that the Commonwealth's failure to disclose Bean's

*pro se* letter to the Commonwealth, in which Bean "insisted that he had been

promised a single[-]digit prison sentence in exchange for his testimony"

constituted a ***Brady*** violation.  Appellant's Brief, at 45.  Wesley contends that

it is irrelevant whether the Commonwealth actually made or meant to keep a

promise of a single-digit sentence but that "the fact [] Bean believed he would

receive [a single-digit] sentence would have shown the jury that his testimony

was fabricated."  ***Id.*** at 46.

> To establish a ***Brady*** violation, a defendant must demonstrate
> that:  (1) the evidence was suppressed by the Commonwealth,
> either willfully or inadvertently; (2) the evidence was favorable to
> the defendant; and (3) the evidence was material, in that its
> omission resulted in prejudice to the defendant.  The mere
> possibility that an item of undisclosed information might have
> helped the defense, or might have affected the outcome of trial[,]
> does not establish materiality in the constitutional sense.

---

[8] We also note that, Attorney Walker objected, on the final day of trial, to **only** the sufficiency of evidence regarding the serious bodily enhancement, not the charge itself.  N.T. Jury Trial, 11/4/21, at 595-96 (Attorney Walker stating "My argument, I guess, Your Honor, is that there was no evidence that suggested that this was serious bodily injury to either one of the parties . . . I suggest that the Commonwealth has not made out the elements for serious bodily injury.").  Attorney Walker also did not object to the serious bodily enhancement jury charge.  ***Id.*** at 663; ***see also*** Pa.SSJI (Crim) § 901D (Additional Elements).  Inasmuch as Wesley was *actually* aware that Commonwealth intended to charge him with the serious bodily injury enhancement, he cannot argue that he was not given notice.

***Commonwealth v. Robinson***, 122 A.3d 367, 373 (Pa. Super. 2015). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ***U.S. v. Bagley***, 473 U.S. 667, 682 (1985); ***see also Commonwealth v. Gibson***, 951 A.2d 1110, 1127 (Pa. 2008).

Instantly, Bean conceded that he was testifying for selfish reasons, including "leniency from the court," and that the nature and extent of his cooperation would be made known to [his] sentencing judge. N.T. Jury Trial, 11/3/21, at 360-61. He testified that no specific amount of incarceration sentence had been discussed, but that he would be permitted to plead guilty to two counts of attempted murder, conspiracy to commit murder, and person not to possess a firearm. ***Id.*** Bean also admitted that he "tried to put the blame away from [him]." ***Id.*** at 259. Accordingly, the jury was aware of Bean's involvement in the incident, the extent his cooperation would impact his sentence, and that he been untruthful with law enforcement officials throughout the investigation.

Moreover, the trial court highlights that there was no mention of the "single[-]digit" sentence agreement at Bean's own sentencing hearing and that Bean was ultimately sentenced to an aggregate term of 15 to 30 years' incarceration. Trial Court Opinion, 8/29/22, at 29. Inasmuch as Bean's self-serving *pro se* letter is the only evidence this agreement existed, the Commonwealth had no obligation to inform Wesley of a non-existent agreement or to correct Bean's testimony at trial. ***See Commonwealth v.***

*Bomar*, 104 A.3d 1179, 1194 (Pa. 2014) (no *Brady* violation where no credible evidence established Commonwealth promised witness parole in exchange for his testimony).

In light of the foregoing, we conclude that there was no *Brady* violation where the only evidence of Bean's alleged promise from the Commonwealth was a self-serving letter written by Bean; nor has Wesley established that there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. *Bagley*, *supra.*

Finally, Wesley claims that his convictions were against the weight of the evidence. Specifically, he contends that the Commonwealth's "entire case" relied on Bean's testimony, which had been "thoroughly impeached." Appellant's Brief, at 54. Wesley argues that phone data showing him in the Norristown area "proved nothing more than [] that [he] traveled to Norristown a month and a half before the shooting." *Id.* at 55. He also claims that other people, including Reed, Vance, and Knight, each had a motive to kill Miller. Wesley is afforded no relief.

This Court reviews weight of the evidence claims for an abuse of discretion:

> The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. [This Court] cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, [this Court's] role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate

review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Hunzer***, 868 A.2d 498, 506-07 (Pa. Super. 2005). Additionally, "[a] motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to review the evidence in the light most favorable to the verdict winner." ***Commonwealth v. Dupre***, 866 A.2d 1089, 1101 (Pa. Super. 2005) (citations omitted).

The trial court's determination that Wesley's convictions were not against the weight of the evidence where Bean was vigorously cross-examined by Attorney Walker, instructions informed the jury that Bean's testimony was "from a corrupt and polluted source," and Bean's testimony was corroborated by Detective Minzola's cell-phone data analysis, is supported by the record. Trial Court Opinion, ***supra*** at 10-12; ***see*** N.T. Jury Trial, 11/4/21, at 756-60, quoting Pa.SSJI (Crim), § 4.01.

Indeed, the jury was well aware of the various lies Bean told through the investigation and the self-serving reasons for which he was testifying. Moreover, the jury was carefully instructed by the court regarding how to evaluate witness credibility and accomplice testimony. ***See*** N.T. Jury Trial, 11/4/21, at 758-59. The jury also heard Detective Minzola's cell phone data analysis, which substantially corroborated Bean's testimony. Bean's testimony that he went with Wesley to Miller's residence on October 21, 2016 is supported by cell phone tower data. ***Id.***, 11/3/21, at 490-92 (Detective

Minzola testifying both Bean and Wesley's phones accessed cell towers in Delaware County, Montgomery County, and Norristown area at 7:56 p.m., 8:01 p.m., and 8:04 p.m., respectively). Bean also testified that, on that day, he took screenshots of the portion of the block where Miller's residence was located. *Id.* at 488-90 (Detective Minzola testifying Bean download an image on October 21, 2021, at 5:41 p.m., depicting 100 block of Haws Avenue, where Miller's home is located). Phone analysis also confirmed that Bean went to Miller's residence in Norristown a few more times before the shooting. *Id.* at 496-98 (Detective Minzola testifying Bean's phone accessed towers in Norristown on October 22, 2016, and October 23, 2016).

Phone data also shows that after Bean informed Wesley that the shooting had occurred, Welsey left Pennsylvania and spent the next three days traveling to Louisiana. *Id.* at 517 (Detective Minzola testifying that on December 2, 2016, the day of shooting, at 5:15 p.m., Bean made a 25-second phone call to Wesley); *id*. at 520-22 (Detective Minzola testifying that between December 2, 2016, and December 4, 2016, Wesley used phone towers in Maryland, Virgina, North Carolina, South Carolina, Georgia, Alabama, Mississippi, and, finally, Louisiana). Indeed, Wesley was later apprehended in Louisiana.

Finally, Wesley's claim that his conviction is against the weight of the evidence because Reed, Vance, and Knight each had a motive to kill Miller affords him no relief. Although Reed introduced Bean and Wesley and accompanied them on their initial trip to Norristown, Bean's testimony

indicates that Wesley, not Reed, requested Bean's assistance in murdering someone.  **See** N.T. Jury Trial, 11/3/21 at 329, 333.  Additionally, Vance testified that although she knows that Miller was involved in Wesley's arrest and that she does not like Miller, Vance "place[s] the blame where it lies, on [Wesley]." **Id.** at 183-84.  Further, Knight testified that he has known Miller for 12 years, and that although he has verbally threatened Miller in the past, he has never and would never follow through on these threats.  N.T. Jury Trial, 11/1/21, at 155, 158-59.  Knight stated that he did tell Vance he wanted Miller "to pay" but he explained that he meant "through the legal system" and in regard to their child custody claims.  **Id.** at 172-74.

In light of the foregoing, the trial court did not abuse its discretion in its determination that Wesley's conviction is not against the weight of the evidence.  **Hunzer**, **supra**.  We, therefore, affirm Wesley's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/26/2023

- 13 -